# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| GEORGE HORD,  )<br>    Plaintiff,  )<br>  )<br>    v.  )<br>  )<br>U-HAUL CORP. CHICAGO ASSEMBLY DIV.,  )<br>TYREE HAMPTON, and JIM NEEDHAM,  )<br>    Defendants.  ) | CAUSE NO.: 2:15-CV-155-JVB-PRC |

## ORDER

This matter is before the Court on Defendants' Motion to Compel Arbitration and Dismiss or Stay Judicial Proceedings Pending Arbitration [DE 9], filed by Defendants U-Haul Co. of Indiana Inc. (erroneously identified by Plaintiff as U-Haul Corp. Chicago Assembly Division), Tyree Hampton, and Jim Needham on July 2, 2015. Plaintiff filed a response on July 21, 2015. Defendants have not filed a reply, and the time to do so has passed.

On April 20, 2015, Plaintiff filed a pro se Complaint against his former employer U-Haul Co. of Indiana Inc. ("U-Haul"), his former supervisor Tyree Hampton, and U-Haul Chicago Assembly Division President Jim Needham based upon his termination from U-Haul. Plaintiff alleges that U-Haul violated the Americans with Disabilities Act and numerous common laws.

In the instant motion, Defendants seek an order compelling arbitration and staying or dismissing this matter pending arbitration because all of Plaintiff's claims are subject to mandatory arbitration under a dispute resolution policy that Plaintiff accepted as a U-Haul employee.

## FACTUAL BACKGROUND

On August 18, 2004, Plaintiff began his employment with U-Haul as an Assembler B. As an Assembler, Plaintiff had the responsibility to work under the direction of a supervisor to perform assembly line functions necessary for the fabrication, conversion, or other assembly of trailers, van

bodies, and rental items. As part of Plaintiff's job responsibilities, he had to read and write in English, which he was able to do. At the time of his hire, Plaintiff had a high school diploma.

In February 2006, U-Haul implemented a new arbitration policy for existing and future employees. The arbitration policy consisted of two documents: (1) a "Notice to Employees About U-Haul's Employment Dispute Resolution Policy" ("EDR Policy"), which contained the arbitration policy terms, and (2) the "U-Haul Employee Agreement to Arbitrate" ("Arbitration Agreement"). The EDR Policy was a condition of employment and if the employee agreed to the terms of the EDR Policy, he or she was instructed to execute the Arbitration Agreement. Plaintiff signed the Arbitration Agreement electronically on November 7, 2007.

By its terms, the EDR Policy requires mandatory binding arbitration of "all existing or future disputes between [Plaintiff] and U-Haul Co. of Indiana, Inc. or its parent, subsidiary, sister or affiliated companies or entities, and each of its and/or other employees, officers, directors, or agents . . . that are related in any way to [Plaintiff's] employment with U-Haul Co. of Indiana, Inc." (Def. Mot. Ex. A). In relevant part, the EDR Policy provides as follows:

> The EDR applies to all U-Haul Co. of Indiana, Inc. employees regardless of length of service or status, and covers all disputes relating to or arising out of employee's employment with U-Haul Co. of Indiana, Inc. or the termination of that employment. Examples of the type of disputes or claims covered by the EDR include, but are not limited to, claims for wrongful termination of employment, breach of contract, fraud, employment discrimination, harassment or retaliation under the Americans With Disabilities Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 and its amendments, state fair employment and housing acts or any other state or local anti-discrimination laws, tort claims, wage or overtime claims or other claims under the Labor Code, or any other legal or equitable claims and causes of action recognized by local, state or federal law or regulations. . . .
>
> Your decision to accept employment or to continue employment with U-Haul Co. of Indiana, Inc. constitutes your agreement to be bound by the EDR . . . . This mutual obligation to arbitrate claims means that both you and U-Haul are bound to use the EDR as the only means of resolving any employment-related disputes. This mutual

2

> agreement to arbitrate claims also means that both you and U-Haul forego any right either may have to a jury trial on claims relating in any way to your employment. . . . No remedies that otherwise would be available to you individually or to U-Haul in a court of law, however, will be forfeited by virtue of this agreement to use and be bound by the EDR. The EDR changes the forum and process for resolving disputes, but does not change the potential legal remedies you have.
>
> The EDR shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq.

*Id*. By the policy terms, any disputes are to be resolved by an "impartial and independent" arbitrator chosen by mutual agreement of the employee and U-Haul. Further, the employee's share of the arbitration fees "shall not exceed the maximum fee established by the applicable AAA rules or the amount equal to [the employee's local court civil filing fee, whichever is less."

The EDR Policy and the Arbitration Agreement were placed on the U-Haul Human Resources Service Center website for existing employees. Employees were requested to review these materials, with the assistance of a lawyer or other advisor if desired, and to accept the EDR Policy as a condition of continued employment. If an employee agreed to the terms of the EDR Policy, he or she was instructed to execute the EDR Agreement by electronically signing it in the electronic human resources document processing system and submitting it. Plaintiff was familiar with the electronic human resources website and was trained in its use. Plaintiff was required to enter his social security number or System Member Identification Number along with a self-selected, confidential password in order to access the cite and then was required to input his name to verify his signature. As noted above, on November 7, 2007, Plaintiff electronically signed and submitted the Arbitration Agreement. Plaintiff thereby acknowledged and understood his obligation to "submit to final and binding arbitration any and all claims and disputes."

Following his execution of the EDR Agreement in November 2007, Plaintiff continued his employment as an Assembler for just under seven years. On or about October 20, 2014, Plaintiff was terminated for insubordination.

On April 20, 2015, Plaintiff filed a four-count Complaint against Defendants in the United States District Court for the Northern District of Indiana alleging a violation of the Americans with Disabilities Act as well as harassment, false accusation, and termination with unjust cause. All of the claims are related to his employment with U-Haul and are lodged against U-Haul or its employees Jim Needham and Tyree Hampton.

## ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, was enacted in 1925 to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements on the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citations and internal quotation marks omitted); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "The Supreme Court has repeatedly counseled that the FAA leaves no room for judicial hostility to arbitration proceedings and that courts should not presume, absent concrete proof to the contrary, that arbitration systems will be unfair or biased." *Penn v. Ryan's Family Steak House, Inc.*, 269 F.3d 753, 758 (7th Cir. 2001) (citations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations."); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 556-56 (7th Cir. 2003) (reversing denial of motion to compel arbitration and explaining that "[i]t is beyond peradventure that the [FAA] embodies a strong federal policy in favor of arbitration") (citation and quotation marks omitted). Recently, the Supreme Court held that

4

"the Act leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25-26 (2011).

An arbitration agreement must meet two basic conditions for the FAA to apply: (1) the agreement must be in writing; and (2) the agreement must be in a contract "evidencing a transaction involving commerce." *See* 9 U.S.C. § 2. In this case, both requirements are met. The FAA "provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone*, 460 U.S. at 22. Both are sought by the Defendants in their motion.

Under § 4, arbitration agreements covered by the FAA are specifically enforceable: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Regarding a stay of litigation pending arbitration, 9 U.S.C. § 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . .

9 U.S.C. § 3. "For arbitrable issues, a § 3 stay is mandatory." *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) (citing *Shearson/Am. Express, Inc. v.McMahon*, 482 U.S. 220, 226 (1987)).

Whether this dispute is subject to arbitration is a question of contract interpretation. *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (citing *Kiefer Specialty Flooring, Inc.*

*v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). The presumption of arbitrability requires the Court to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and citation omitted). Any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Nevertheless, parties should only be required to arbitrate those matters the parties agreed to submit to arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82 (2002).

In this case, Plaintiff's claims fall within the EDR Policy. Plaintiff signed the Arbitration Agreement and continued employment with U-Haul for seven years thereafter. The EDR Policy provides that the EDR "covers all disputes relating to or arising out of employee's employment with [U-Haul]" and explains that "[t]his mutual obligation to arbitrate claims means that both you and U-Haul are bound to use the EDR as the only means of resolving any employment-related disputes." Both the United States Supreme Court and the United States Court of Appeals for the Seventh Circuit have found that the phrase "arising out of or relating to" signifies "a broad arbitration clause." *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993). In *Sweet Dreams*, the Seventh Circuit Court of Appeals held that

> "arising out of" reaches all disputes having their origin or genesis in the contract. . . . In fact, any dispute between contracting parties that is in any way connected with their contract could be said to "arise out of" their agreement and thus be subject to arbitration under a provision employing this language.

1 F.3d at 642. Moreover, the arbitration provision expressly references "claims for wrongful termination of employment, . . . employment discrimination, harassment, or retaliation under the

Americans with Disabilities Act, . . . or any other state or local anti-discrimination laws." Plaintiff's ADA and common law claims are subject to arbitration.

Plaintiff argues in his response brief that he "did not sign an arbitration agreement, in person or electronically" and that "[t]he U-Haul Employee Agreement to Arbitration with my name typed is fraudulent." First, Plaintiff's response brief is not sworn nor does it comply with the requirements of 28 U.S.C. § 1746 for an unsworn declaration under penalty of perjury. Second, Defendants have offered evidence of the secure procedure by which Plaintiff's signature was placed on the Arbitration Agreement, and Plaintiff neither acknowledges that evidence nor draws it into question. Even if Plaintiff did not read the arbitration provision, he is bound by it. *James v. McDonald's Corp.*, 417 F.3d 672, 678 (7th Cir. 2005).

In his response, Plaintiff also argues that he "would never sign an arbitration agreement waiving [his] rights granted by the Americans with Disabilities Act (ADA) of 1990." Plaintiff has not waived his rights granted by the ADA, as the EDR Policy provides that "[n]o remedies that otherwise would be available to you individually or to U-Haul in a court of law, however, will be forfeited by virtue of this agreement to use and be bound by the EDR. The EDR changes the forum and process for resolving the disputes, but does not change the potential legal remedies you have." Rather, he has only waived his right to a jury trial. *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010); *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002).

As a final matter, Defendants ask the Court to either stay or dismiss this action pending arbitration. Section § 3 of the FAA provides for a stay of litigation, and the Seventh Circuit Court of Appeals has held that the § 3 stay is mandatory. *See Volkswagen of Am.*, 474 F.3d at 971; *see also*

*Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002). Accordingly, a stay, and not dismissal, is appropriate.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendants' Motion to Compel Arbitration and Dismiss or Stay Judicial Proceedings Pending Arbitration [DE 9] and **ORDERS** that the parties arbitrate this dispute pursuant to the EDR Policy.

The Court further **ORDERS** that this matter be **STAYED** pending the outcome of arbitration. The Clerk of Court is to **MARK** this action **CLOSED** for statistical purposes. The Court shall retain jurisdiction and the case shall be restored to the trial docket upon motion of a party if circumstances change, so that it may proceed to final disposition. This order shall not prejudice the rights of the parties to this litigation.

SO ORDERED this 19th day of August, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT